**FILED**
**Sep 02, 2022**
**12:58 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| **Brent Bumgarner,** | ) | **Docket No. 2021-06-0221** |
| **Employee,** | ) | |
| **v.** | ) | |
| **Amazon.com Services, LLC,** | ) | |
| **Employer,** | ) | |
| **And** | ) | **State File No. 7772-2021** |
| **Zurich American Insurance Co.,** | ) | |
| **Carrier,** | ) | |
| **And** | ) | |
| **Troy Haley, Administrator,** | ) | |
| **Subsequent Injury Fund.** | ) | **Judge Kenneth M. Switzer** |

## EXPEDITED HEARING ORDER GRANTING MEDICAL BENEFITS

In this accepted claim, Brent Bumgarner seeks an order that Amazon provide temporary disability and additional medical benefits for his low-back injury. Specifically, he asks the Court to designate orthopedist Dr. Michael McNamara as the authorized treating physician. Amazon counters that Mr. Bumgarner should instead return to generalist Dr. Harold Nevels, the panel-selected physician.

After an expedited hearing, the Court orders Amazon to offer a panel of orthopedic specialists but denies the request for temporary disability benefits. Further, the case is referred to the Compliance Program for investigation of Amazon's initial handling of the claim.[1]

---

[1] The dispute certification notice additionally lists compensability and notice as issues, but Amazon agreed that, at this hearing, it is not contesting the work-relatedness of the injury. It offered no proof on its notice defense. These defenses may be raised at the compensation hearing. For his part, Mr. Bumgarner clarified that he is not seeking payment for past treatment with Dr. McNamara at this time.

**Claim History**

Mr. Bumgarner alleged he injured his back while working for Amazon on November 25, 2020. He selected Dr. Nevels from a panel.

Mr. Bumgarner saw Dr. Nevels four times in December 2020. At the first visit, Dr. Nevels diagnosed a lumbar strain and assigned restrictions. Mr. Bumgarner testified that he disagreed with the diagnosis. He wrote in his declaration that he was "shocked" by the decision to return him to modified duty, given his pain. The declaration stated that, at the second visit, he had "a few choice words for Dr. Nevels [sic] competency," but he later apologized.[2]

Dr. Nevels maintained the work restrictions at the third visit, although he noted that Mr. Bumgarner was not working. He referred him to physical therapy, which never occurred. Instead, at the final visit, Dr. Nevels wrote that Mr. Bumgarner "will see ORTHO on 1/4/21." But the doctor did not refer Mr. Bumgarner to an orthopedic specialist. Rather, he placed him at maximum medical improvement, retained the restrictions, and discharged him from treatment. Dr. Nevels later clarified that he did not refer Mr. Bumgarner to a specialist at that appointment.

In January 2021, Mr. Bumgarner sought treatment with Dr. McNamara. Dr. McNamara diagnosed degenerative disc disease in his lumbar spine and ordered an MRI, which revealed a disc herniation and a disc protrusion causing moderate spinal stenosis. In February, Mr. Bumgarner reported improvement after an injection, so the doctor recommended another and also noted left-sided lumbar radiculopathy. Dr. McNamara wrote a note excusing him from work "until the next f/u appt." In March, Dr. McNamara considered Mr. Bumgarner's condition "stable." He told him to contact the office for additional injections and released him to return as needed. Mr. Bumgarner did not return until almost a year later due to treatment of other, non-work-related conditions.

Mr. Bumgarner testified he learned that Amazon denied additional medical benefits in March for "noncompliance." Neither party introduced a notice of denial or notice of controversy. Mr. Bumgarner then filed a petition for benefit determination.

In May 2021, Amazon sent Dr. Nevels a letter to clarify his opinions. Amazon first asked whether Mr. Bumgarner's "subsequent and ongoing symptoms are primarily related to the November 25, 2020 alleged work injury." Dr. Nevels responded with a "qualified yes" and described the work incident but noted Mr. Bumgarner told him he would see another orthopedist and "would not be back to see me." Dr. Nevels added, "I did not refer him to Orthopedics for a simple lumbar strain. I have not seen him since the 12/28/20 office visit."

---

[2] The parties did not introduce notes from the second visit on December 14.

Dr. Nevels declined to comment on whether Mr. Bumgarner had reached maximum medical improvement. Likewise, Dr. Nevels did not give an opinion on restrictions, but he noted, "I would have expected a simple lumbar strain to have resolved by now."

In February 2022, Mr. Bumgarner returned to Dr. McNamara, who retained the diagnoses of lumbar radiculopathy and spinal stenosis. He recommended physical therapy and a follow-up MRI.

Dr. McNamara wrote in a letter after that visit, "Based on the history I have been given I would state that your injury occurred while working as a picker at Amazon. It exacerbated [your] pre-existing spinal stenosis to a point and became more symptomatic." In March, he reviewed the imaging results and recommended another injection.

At the hearing, Mr. Bumgarner testified that his low back still hurts and that Dr. Nevels was "dismissive to [his] claim that it was more" and "didn't hear [him]." Mr. Bumgarner disagreed that he "refuses" to see Dr. Nevels but said, "It is not preferred." Mr. Bumgarner agreed that he stopped treatment with Dr. Nevels, but he testified, without objection, that he had asked Amazon to provide a specialist, and it declined.

Mr. Bumgarner disagreed with Dr. Nevels that he could work modified duty, and he never attempted it. Amazon has not paid any temporary disability benefits.

Mr. Bumgarner asked the Court to designate Dr. McNamara as the authorized treating physician. He also requested temporary disability benefits.

Amazon countered that it properly suspended benefits because Mr. Bumgarner was noncompliant, since he did not accept further treatment with Dr. Nevels. Rather, he stopped treatment to see Dr. McNamara on his own. Amazon further asserted that medical treatment should resume with Dr. Nevels, and Mr. Bumgarner did not prove he is entitled to temporary disability benefits.

For its part, the Subsequent Injury Fund agreed that temporary disability is not warranted but contended that Mr. Bumgarner is entitled to a panel of orthopedic specialists.

**Law and Analysis**

To grant Mr. Bumgarner's requests, he must prove he is likely to prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1) (2021); *McCord v. Advantage Human Resourcing,* 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

*Medical Benefits*

The Workers' Compensation Law states that an employer must furnish medical treatment made reasonably necessary by a work injury. Tenn. Code Ann. § 50-6-204(a)(1)(A). Amazon complied with this obligation by authorizing treatment with Dr. Nevels.

However, Amazon later suspended medical benefits under Tennessee Code Annotated section 50-6-204(d)(8). That provision states that when an employee refuses "to accept the medical . . . services that the employer is required to furnish . . ., the injured employee's right to compensation shall be *suspended* and no compensation shall be due and payable while the injured employee continues to refuse." (Emphasis added). The Appeals Board explained that this provision means that "in circumstances where an employee is noncompliant with medical treatment, compensation shall be held in abeyance, *not terminated.*" *Newell v. Metro Carpets, LLC*, 2016 TN Wrk. Comp. App. Bd. LEXIS 57, at *4-5 (Sept. 28, 2016) (Emphasis added).

Amazon contended that Mr. Bumgarner refused to accept further treatment from Dr. Nevels, which constitutes noncompliance. The Court agrees. However, that does not forever foreclose his right to medical benefits, considering the authority below.

In *Limberakis v. Pro-Tech Sec., Inc.,* 2017 TN Wrk. Comp. App. Bd. LEXIS 53 (Sept. 12, 2017), the authorized treating physician placed the employee at maximum medical improvement, determined he needed no additional treatment, and refused to see him. After an expedited hearing, the Court ordered the employer to offer a panel, and the Appeals Board affirmed. The Board wrote, "In the absence of evidence directed specifically to the issue of termination of treatment, the employer must provide [the employee with] future, free reasonably necessary medical treatment." *Id.* at *6. It was "significant" and "determinative" to the Board that the case was at the interlocutory phase and that the employee's claim was accepted. *Id.* at *9.

Here, Dr. Nevels, a general practitioner, placed Mr. Bumgarner at maximum medical improvement in December 2020 but later declined to comment on that issue in response to Amazon's letter. Mr. Bumgarner credibly testified that his back still hurts. An employee's assessment as to his own physical condition "is competent testimony that is not to be disregarded." *Id.* at *10. Dr. McNamara, an orthopedist, diagnosed a back condition, confirmed by diagnostic imaging, so the medical proof suggests that Mr. Bumgarner requires treatment by a specialist physician. In addition, a return to Dr. Nevels would likely inject further delay into this case.

Further, Dr. Nevels and Dr. McNamara addressed causation to some degree. Dr. Nevels responded with a "qualified yes" when asked if Mr. Bumgarner's condition related to work. Dr. McNamara similarly wrote, "Based on the history I have been given I would

state that your injury occurred while working as a picker at Amazon. It exacerbated [your] pre-existing spinal stenosis to a point and became more symptomatic."

Amazon offered no evidence to counter these opinions. While these opinions do not use language directly from the definition of "injury" in the Workers' Compensation Law, they, along with the other evidence, support an order that Mr. Bumgarner receive further medical treatment at this interlocutory stage. *See Lewis v. Molly Maid,* 2016 TN Wrk. Comp. App. Bd. LEXIS 19, at *6-9 (Apr. 20, 2016) (Trial court properly determined that employee introduced sufficient evidence to show entitlement to a panel of physicians, where she testified without contradiction that she experienced pain after operating work equipment).

In sum, the Court holds Mr. Bumgarner is likely to prevail at a hearing on the merits that he is entitled to additional medical treatment. Amazon shall offer a panel of orthopedic specialists.

*Temporary Disability Benefits*

Next, Mr. Bumgarner seeks disability benefits. Looking first at temporary partial disability, an injured employee may be eligible for these benefits if the treating physician has released the worker to return to work with restrictions before reaching maximum recovery, and the employer cannot or will not return the employee to work within the restrictions. *Woodard v. Freeman Expositions,* 2021 TN Wrk. Comp. App. Bd, LEXIS 21, at *7 (July 16, 2021). Here, Dr. Nevels placed Mr. Bumgarner on restrictions, but by his own admission, Mr. Bumgarner did not attempt modified duty, so he is ineligible for temporary partial disability benefits.

To receive temporary total disability benefits, Mr. Bumgarner must prove (1) total disability from working as the result of a compensable injury; (2) a causal connection between the injury and the inability to work; and (3) the duration of the period of disability. *Id.* at *6-7.

Considering these principles, Dr. McNamara excused Mr. Bumgarner from work in February 2021, but almost an entire year passed while Mr. Bumgarner treated other medical problems. The 2022 treatment notes do not mention work restrictions. On this record, Mr. Bumgarner has not proven the dates of disability or that his injury arose primarily out of and in the course and scope of his employment, so he is not likely to prevail on his request for temporary total disability benefits at this time. Nothing precludes him from gathering additional evidence and renewing this request at a later hearing.

*Compliance Program Referral*

Finally, the Bureau's Compliance Program is authorized to assess penalties under the Workers' Compensation Law and the General Rules of the Workers' Compensation Program. The Court refers this case to the Compliance Program for possible penalty assessments regarding its handling of Mr. Bumgarner's claim. Specifically, the Program should consider whether Amazon engaged in the following:

- Failure to mediate in good faith; see the dispute certification notice and mediator's comments. Tenn. Code Ann. § 50-6-118(8); Tenn. Comp. R. and Regs. 0800-02-21.10(7) (February, 2022).
- Failure to file a notice of controversy after electing to controvert liability. Tenn. Code Ann. § 50-6-205(d)(1); Tenn. Comp. R. and Regs. 0800-02-14.04(8) (July 2021).

IT IS ORDERED AS FOLLOWS:

1. Amazon shall promptly offer a panel of orthopedic specialists for Mr. Bumgarner to choose a physician.

2. Mr. Bumgarner's request for temporary disability benefits is denied at this time.

3. The case is referred to the Compliance Program for investigation as outlined above.

4. The Court sets a status hearing on **October 31, 2022, at 9:30 a.m. Central Time.** You must dial (615) 532-9552 or (866) 943-0025 to participate.

5. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

**ENTERED September 2, 2022.**

_____
**JUDGE KENNETH M. SWITZER**
**Court of Workers' Compensation Claims**

## Appendix

Exhibits:

A. Declaration of Mr. Bumgarner
B. Wage statement
C. Employer's exhibits
    1. Form C-42
    2. Concentra medical records
    3. Dr. Nevels's questionnaire
D. Dr. McNamara medical records
E. Proposed Exhibit List

Technical Record:

1. Petition for Benefit Determination
2. Dispute Certification Notice, Employee and Employer's Responses, and the mediator's addition
3. Employer's Motion in Support of Dismissal
4. Show-Cause Order, August 4, 2021
5. Show Cause Order, September 1, 2021
6. Motion to Dismiss Tennessee Subsequent Injury Fund
7. Order on Show-Cause Hearing
8. Hearing Request
9. Employee's Correction to Date of Injury (TNComp email), October 18, 2021
10. Order on Motions to Dismiss
11. Appeals Board Opinion
12. Order Setting Expedited Hearing
13. Tennessee Subsequent Injury Fund Expedited Hearing Brief
14. Employer's Pre-Hearing Brief
15. Employee's Request for Continuance
16. Order Continuing Expedited Hearing
17. Status Hearing Order
18. Notice of Deposition of Dr. Michael McNamara
19. Order Setting Expedited Hearing
20. SIF Superseding Expedited Hearing Brief
21. Employer's Pre-Hearing Brief, June 20, 2022
22. Motion: Request for Continuance
23. SIF Response to Motion for Continuance
24. Order Continuing Expedited Hearing

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent as indicated on September 2, 2022.

| Name | Mail | Email | Service sent to: |
|---|---|---|---|
| Brent Bumgarner, Employee | | X | Brent.bumgarner@yahoo.com |
| Troy Hart, Adam Brock-Dagnan, Employer's attorneys | | X | wth@mijs.com acbrock-dagnan@mijs.com ssshell@mijs.com |
| Ronald McNutt, SIF attorney | | X | Ronald.mcnutt@tn.gov |
| Compliance Program | | X | WCCompliance.Program@tn.gov |

_____

Penny Shrum
Clerk, Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov



Expedited Hearing Order Right to Appeal:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on_____     ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*